IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WILLIE GRAYEYES, an individual, and TERRY WHITEHAT, an individual,<br><br>                  Plaintiffs,<br>v.<br><br>SPENCER COX, as Lieutenant Governor of the state of Utah; JOHN DAVID NIELSON, as Clerk/Auditor of San Juan County, a political subdivision of the state of Utah; KENDALL G. LAWS, as Attorney of San Juan County, a political subdivision of the state of Utah; COLBY TURK, as Deputy Sheriff in the Sheriff's Office of San Juan County, a political subdivision of the state of Utah; and WENDY BLACK, an individual,<br><br>                  Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [13] PLAINTIFF GRAYEYES'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 4:18-cv-00041<br><br>District Judge David Nuffer |

Plaintiff Willie Grayeyes ("Plaintiff Grayeyes") filed a motion for preliminary injunction ("Motion") seeking restoration of Plaintiff Grayeyes's right to vote and status as a candidate for San Juan County Commissioner in District 2 in the November 2018 general election.[1] The parties briefed the Motion on an expedited briefing schedule. Defendants filed their responses on July 11, 2018.[2] Plaintiff filed a reply.[3] After expedited discovery was conducted, parties also

---

[1] Plaintiff Grayeyes's Motion and Brief in Support of Preliminary Injunction and Related Relief, docket no. 13, filed June 6, 2018.

[2] Defendant Wendy Black's Opposition to Plaintiffs' Motion for Preliminary Injunction, docket no. 55; Defendant Spencer Cox's Response to Plaintiff's Motion and Brief in Support of Preliminary Injunction and Related Relief, docket no. 56; and San Juan County Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, docket no 57.

[3] Plaintiff Grayeyes's Reply to Defendants' Opposition Responses to Motion for Preliminary Injunction, docket no. 68, filed July 20, 2018.

submitted supplemental memoranda on July 27, 2018.[4]  Defendants Colby Turk,[5] Kendall Laws,[6] Wendy Black,[7] and Spencer Cox[8] were subsequently dismissed as parties.  San Juan County Clerk John David Nielson ("Defendant Nielson") is the only remaining defendant at this point in time.

On August 7, 2018, the parties presented oral argument at a hearing ("Preliminary Injunction Hearing") on the Motion.[9]  This is an interim order for injunctive relief pending trial. It is not a final decision.

**Contents**

FACTS ............................................................................................................................. 3
DISCUSSION ................................................................................................................. 9
    Preliminary Injunction Standard ........................................................................ 9
    Plaintiff Grayeyes Will Suffer Irreparable Harm in the Absence of Preliminary Relief.. 10
    The Balance of Equities is in Plaintiff's Favor. .............................................. 10
    The Injunction is in the Public Interest. .......................................................... 11
    Plaintiff is Likely to Succeed on the Merits..................................................... 11
        Challenge to Candidacy ........................................................................... 12
        Challenge to Voter Status ........................................................................ 13
        Use of Voter Challenge to Challenge Candidacy .................................... 15
        Other Acts without Statutory Authority.................................................... 15
        Plaintiff Grayeyes Has Shown a Strong Likelihood of Success .......................... 16
    No Bond is Required.......................................................................................... 17
ORDER AND PRELIMINARY INJUNCTION ........................................................ 18

---

[4] Supplemental Memorandum in Support of Motion for Preliminary Injunction ("Plaintiff's Supplemental Memorandum"), docket no. 75; Defendant Wendy Black's Supplemental Memorandum re: Motion for Preliminary Injunction, docket no. 76; San Juan County Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("San Juan County Defendant's Supplemental Memorandum"), docket no. 77.

[5] Motion to Drop Colby Turk as Defendant, docket no. 79, filed August 31, 2018. Docket Text Order Granting [79] Motion to Dismiss Party, docket no. 81, entered August 1, 2018.

[6] Motion to Dismiss Wendy Black and Kendall Laws as Defendants and Memorandum of Law in Support, docket no. 83, filed August 2, 2018. Order Dismissing Wendy Black and Kendall Laws as Defendants, docket no. 88, entered August 3, 2018.

[7] *Id*.

[8] Stipulated Motion to Dismiss Spencer Cox as Defendant, docket no. 84, filed August 2, 2018. Order Dismissing Spencer Cox as Defendant, docket no. 89, entered August 3, 2018.

[9] Minute Entry, docket no. 93, entered August 9, 2018.

# FACTS[10]

1.  In 2012, Plaintiff Grayeyes was certified to run as the Democratic Party nominee for a seat on the San Juan County Commission.[11]

2.  At that time, County Clerk Norman Johnson e-mailed Plaintiff Grayeyes to confirm his residential address.[12] Mr. Johnson did not take any further action after Plaintiff Grayeyes provided his physical address.

3.  In 2016, Plaintiff Grayeyes renewed his voter registration in San Juan County. County Clerk John Nielson ("Defendant Nielson") approved the voter registration.[13]

4.  On March 9, 2018, Plaintiff Grayeyes submitted a Declaration of Candidacy to run in the 2018 election for San Juan County Commissioner in District 2.[14]

5.  On March 20, 2018, at 4:30 p.m., Wendy Black e-mailed Defendant Nielson (the "March 20th Email"), stating:

    > I would like to formally challenge the validity of Willie Grayeyes being able to run for San Juan County, Utah Commissioner. It has been brought to my attention that he may live outside of the county and state of Utah. My concern is as a challenger for this commission seat.[15]

---

[10] These facts were reviewed with counsel at the Preliminary Injunction Hearing. The Court's Exhibits were also reviewed with counsel at the hearing.

[11] Complaint, Ex. R, docket no. 2.

[12] Crt. Ex. 1, "October 29, 2012 Email from County Clerk Johnson to Willie Grayeyes re: Election Issues," filed as San Juan County Defendants' Supplemental Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, docket no. 77, filed July 27, 2018.

[13] Complaint, Ex. Q, docket no. 2.

[14] Crt. Ex. 2, "March 9, 2018 Willie Grayeyes's Declaration of Candidacy," filed as Complaint, Ex. A, docket no. 2.

[15] Crt. Ex. 3, "March 20, 2018 Email from Wendy Black to Nielson re: Grayeyes's Candidacy Challenged," filed as Plaintiff's Supplemental Memorandum, Ex. 1, docket no. 75.

6. Either later that day or the next morning, Ms. Black delivered a printed document that contained the same content as her prior e-mail and her handwritten signature (the "March 20th Challenge). [16]

7. On March 21, 2018, Defendant Nielson emailed San Juan County Sheriff Rick Eldredge, suggesting that the Sheriff send someone to investigate Plaintiff Grayeyes's residence:

> Last night Wendy Black brought in a formal complaint challenging Willie Grayeyes [sic] residence. Back in 2012, it appears that there was a question of Willie Grayeyes [sic] address . . . It appears that Willie verified to Norman where he lived, but it doesn't look like anyone went and verified that the information was correct. It might not hurt to send someone out there to look, take pictures, or ask around.[17]

8. Sherriff Eldredge assigned Deputy Colby Turk to do so on or about March 23, 2013.[18]

9. On March 22, 2018, Defendant Nielson emailed Derek Brenchley, Assistant Deputy Director of Elections, about the challenge received from Ms. Black:

> [W]e had a person challenge a candidate's declaration. They don't think that the candidate lives in Utah. Could we talk about what that process looks like?[19]

10. Mr. Brenchley provided the statutory references for a candidate challenge and for the first time raised the statute governing voter registration challenges.[20]

11. During their email correspondence, Defendant Nielson responded, "[Ok], so I think the challenge is more towards the voters [sic] residency . . . ."[21]

---

[16] San Juan County Defendants' Supplemental Memorandum, Ex. A, docket no. 77.

[17] Crt. Ex. 5, "March 21, 2018 Email from Nielson to County Sheriff Eldredge," filed as Complaint, Ex. D.

[18] Complaint, Ex. C.

[19] Crt. Ex. 6, "March 22, 2018 Emails between Nielson and Derek Brenchley," filed as San Juan Defendants' Supplemental Memorandum, Ex. E, docket no. 77.

[20] *Id*.

[21] *Id*.

12. Mr. Brenchley advised Defendant Nielson that there is no clear linkage between a voter challenge and candidate challenge, though the lack of voter status may be a barrier to taking office:

> If you sustain the challenge against a candidate, the code does not provide much guidance on how to proceed. As far as I know the code does not establish a formal process to remove a candidate from the-ballot (other than disqualifying them due to failure to file financial disclosures). It is possible that the candidate could still be on the ballot, but they would be ineligible to hold the office if they are elected, thus creating a vacancy.[22]

13. March 22, 2018 at 4:30 p.m. was end of the 48-hour deadline for Defendant Nielson to make a decision on Mrs. Black's candidacy challenge under Utah Code Ann. § 20A-9-202. He did not do so.

14. On March 24, 2018, the San Juan Democratic Party nominated Plaintiff Grayeyes as the Democratic Party candidate for the 2018 election.[23]

15. On March 28, 2018, Defendant Nielson mailed a letter ("March 28th Letter) to Plaintiff Grayeyes stating:

> [Y]our right to vote and/or hold office in San Juan County Utah has been challenged by Wendy Black of Blanding, Utah. The basis of this challenge is that your primary residence is not in San Juan County, Utah, rather the State of Arizona . . . . Under Utah Code, Title 17-6-1, one of the requirements for a person filing a declaration of candidacy for a county shall; [sic] have been a resident for at least one year of the county in which he/she seeks office. Utah Code 20-A-3-202.3 (3)(c) states that the challenged party is allowed the opportunity to submit information to refute the challenge . . . . Your response and evidence to this challenge would be greatly appreciated as soon as possible.[24]

---

[22] *Id*.

[23] Complaint ¶ 2.

[24] Complaint, Ex. D, docket no. 2.

16. The March 28th Letter was not emailed to Plaintiff Grayeyes even though Defendant Nielson had Plaintiff Grayeyes's email address on file from Mr. Johnson's 2012 email.

17. On April 10, 2018, Plaintiff Grayeyes informed Defendant Nielson via email that he received the March 28th Letter.[25]

18. On April 13, 2018, Defendant Nielson e-mailed Ms. Black a voter registration challenge form and asked her to fill it out. Ms. Black responded that she will do it "for the county."[26]

19. On April 16, 2018, Ms. Black met with Defendant Nielson to turn in the completed voter registration challenge form (the "April 16th Challenge"), which she backdated to March 20, 2018, and which Defendant Nielson signed, affirming that it was sworn before him on March 20, 2018.[27]

20. On April 19, 2018, Natalie Callahan, Communications Coordinator for San Juan County, issued a press release announcing that Plaintiff Grayeyes's candidacy was under investigation and may result in criminal charges.[28] The press release does not mention any voter qualification issues. Defendant Nielson was allowed to review and comment on the press release before it was issued.[29]

---

[25] Crt. Ex. 17, "Supplemental GRAMA Response," at p. 11, filed as Plaintiff's Supplemental Memorandum, Ex. 1, docket no. 75.

[26] Crt. Ex. 10, "April 13, 2018 Email from Nielson to Wendy Black re: Voter Challenge," filed as Plaintiff's Supplemental Memorandum, Ex. 1, docket no. 75.

[27] Plaintiff Grayeyes's Reply to Defendants' Opposition Responses to Motion for Preliminary Injunction, Ex. 1 at p. 61-3, docket no. 68, filed July 20, 2018.

[28] Crt. Ex. 12, "April 19, 2018 San Juan County Press Release," filed as Complaint, Ex. E, docket no. 2.

[29] Plaintiff Grayeyes's Reply to Defendants' Opposition Responses to Motion for Preliminary Injunction, Ex. 1

21. Between April 19 and May 3, 2018, Plaintiff Grayeyes made several requests to Defendant Nielson that he provide a copy of the challenge received against Plaintiff Grayeyes and information related to Defendant Nielson's investigation of the challenge.[30] Defendant Nielson did not provide any documents, including the March 20th Email, March 20th Challenge, and April 16th Challenge.

22. On May 3, 2018, Plaintiff Grayeyes sent a GRAMA request to Defendant Nielson, requesting copies of all documents related to any challenge against Plaintiff Grayeyes as a voter or candidate for elected office in San Juan County.[31]

23. On May 9, 2018, Defendant Nielson mailed Plaintiff Grayeyes a letter stating his decision that Plaintiff Grayeyes was not eligible to register to vote because he did not have a "principal place of residence" within San Juan County, Utah.[32]

24. On May 10, 2018, Defendant Nielson sent Plaintiff Grayeyes another letter revoking his declaration of candidacy:

> In light of the outcome of the voter challenge against you, I am now aware that you do not meet the requirements of a candidate for office under Utah Code Ann. § 17-16-1 because you are not a registered voter and have not resided for at least one year in the district in which you seek office. Therefore, at this time I can no longer accept your declaration of candidacy pursuant to Utah Code Ann. § 20A-2-201(4).[33]

---

[30] Complaint, Ex. F.

[31] Crt. Ex. 9, "May 3, 2018 GRAMA Request," filed as Complaint, Ex. T at p. 2-5.

[32] Crt. Ex. 13, "May 9, 2018 Letter from Nielson to Grayeyes re: Challenged Right to Vote," filed as Plaintiff's Supplemental Memorandum, Ex. B at p. 45-47.

[33] Crt. Ex. 14, "May 10, 2018 Letter from Nielson to Grayeyes re: Candidacy Revocation," filed as Plaintiff's Supplemental Memorandum, Ex. B at p. 40.

25. That same day, Defendant Nielson also sent a letter to the Democratic Party that Plaintiff Grayeyes did not meet the residency requirements to be a registered voter and that the Democratic Party had until August 31, 2018, to certify the name of a replacement candidate.[34]

26. On May 24, 2018, Defendant Nielson provided incomplete documents in response to the May 3rd GRAMA request.[35] Defendant Nielson failed to include the March 20th Email and March 20th Challenge.

27. On June 20, 2018, Plaintiffs filed their Complaint.[36]

28. On June 26, 2018, the San Juan County Primary Election was held.

29. On June 26, 2018, Plaintiff Grayeyes filed a motion for preliminary injunction and related relief.[37]

30. August 30, 2018 is the last date that the Utah Democratic Party may seek to designate a replacement candidate under Utah Code Ann. § 20A-1-501(1)(c)(iii).

31. The Lt. Governor is required to certify the ballot under Utah Code Ann. § 20A-9-701 by August 31, 2018.

32. In-person early voting for the general election will take place between October 23, 2018 and November 2, 2018.

33. General election day is November 6, 2018.

---

[34] Crt. Ex. 15, "May 10, 2018 Letter from Nielson to James Adakai re: Grayeyes and Democratic Party Candidate," filed as Plaintiff's Supplemental Memorandum, Ex. B at p. 39.

[35] Crt. Ex. 16, "May 24, 2018 GRAMA Response," filed as Complaint, Ex. I at p. 2-36.

[36] Docket no. 2.

[37] Docket no 13.

## DISCUSSION

### Preliminary Injunction Standard

To obtain a preliminary injunction, the movant must demonstrate that four factors weigh in favor of the injunction:

(1) the likelihood of success on the merits;
(2) the likelihood that the movant will suffer irreparable harm in the absence of preliminary relief;
(3) the balance of equities tips in the movant's favor;[38] and
(4) the injunction is in the public interest.[39]

Because a preliminary injunction is an extraordinary remedy, the "right to relief must be clear and unequivocal."[40]

Here, the injunctive relief sought by Plaintiff Grayeyes is mandatory rather than prohibitory in nature. In other words, it alters rather than maintains the status quo, or otherwise affords Plaintiffs all the relief they would potentially receive following trial on the merits.[41] This is typical of an election case, in which a public official has taken action that can only be corrected by affirmative relief granted in a short time frame. Nonetheless, the requested injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course . . . . [A] party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."[42]

---

[38] The Tenth Circuit has sometimes framed this factor as the "balance of harms" rather than the "balance of equities." *See, e.g. Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009) (setting forth one of the elements of preliminary injunction as "the threatened injury to the moving party outweighs the harm to the opposing party resulting from the injunction"). Here, as must generally be the case, what is least harmful on balance is also most equitable on balance.

[39] *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1208 (10th Cir. 2009).

[40] *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

[41] San Juan County Defendant's Opposition at p. 8.

[42] *Schrier v. University of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005).

All elements for injunctive relief are satisfied. Defendant Nielson does not dispute that factors 2 (irreparable harm), 3 (balance of harms), and 4 (public interest) are met. Accordingly, these factors will be addressed first.

**Plaintiff Grayeyes Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

Irreparable injury occurs "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."[43] Moreover, "an injury is not speculative simply because it is not certain to occur. The 'irreparable harm requirement is met if a [movant] demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'"[44]

Plaintiff Grayeyes argues that he will suffer irreparable harm if the requested relief is not granted because he will be unable to run as a candidate or vote in the 2018 elections. Violation of core constitutional rights is always an irreparable harm.[45] Defendant Nielson did not dispute this factor but instead acknowledged that "irreparable injury . . . is presumed to exist whenever First Amendment constitutional rights are infringed.'"[46]

**The Balance of Equities is in Plaintiff's Favor.**

"[A] court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[47] In contrast to Plaintiff Grayeyes's assertion of loss of constitutional rights, Defendants did not argue or present any

---

[43] *Id*. (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)).

[44] *Id*. (quoting *Greater Yellowstone Coalition v. Flowers,* 321 F.3d 1250, 1258 (10th Cir. 2003)).

[45] *Hobby Lobby Stores v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013).

[46] San Juan County Defendant's Opposition at p. 9 (citing *Albright v. Bd. of Educ. of Granite Sch. Dist.*, 765 F. Supp. 682, 686–87 (D. Utah 1991)).

[47] *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987).

evidence that they would suffer harm if the injunctive relief was granted. Defendant Nielson did not dispute this factor either.

## The Injunction is in the Public Interest.

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights."[48] "While the public has an interest in the will of the voters being carried out . . . the public has a more profound and long-term interest in upholding an individual's constitutional rights."[49] Defendant Nielson does not dispute that '[v]indication of constitutional freedoms and protection of First Amendment rights is in the public interest . . . .'"[50] The public has a strong interest in having a valid election.

## Plaintiff is Likely to Succeed on the Merits.

"'A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain.'"[51] Significantly, "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."[52] "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[53] Plaintiff's Motion involves fundamental civil rights—voting and candidacy. Before these rights can be stripped, due process must be followed.

---

[48] *Hobby Lobby*, 723 F.3d at 1147.

[49] *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012).

[50] San Juan County Defendant's Opposition at p. 9 (citing *Albright v. Bd. of Educ. of Granite Sch. Dist.*, 765 F. Supp. 682, 686–87 (D. Utah 1991)).

[51] *Awad*, 670 F.3d at 1131 (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001)).

[52] *Awad*, 670 F.3d at 1131 (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)).

[53] *Hobby Lobby*, 723 F.3d at 1145.

For a claim involving procedural due process,[54] the plaintiff must show two elements: "(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process."[55] "The right to vote . . . implicates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment."[56] The Due Process Clause requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[57] In this case, the Utah's Election Code[58] sets forth the applicable level of process that Defendant Nielson was required to follow.

**Challenge to Candidacy**

Utah Code Ann. § 20A-9-202(5) outlines a specific procedure to challenge a candidate. The statute states "A declaration of candidacy filed under this section is valid unless a written objection is filed with the clerk or lieutenant governor within five days after the last day for filing."[59] Then, a notice of objection must be "immediately" provided to the affected candidate.[60] Finally, an objection must be decided "within 48 hours after it is filed."[61]

The March 20th Challenge by Ms. Black was clearly an objection to Plaintiff Grayeyes's candidacy. Putting aside the obvious deficiencies with the March 20th Challenge, Defendant Nielson had a statutory obligation to immediately notify Plaintiff Grayeyes and to resolve the

---

[54] San Juan Defendants' Opposition at p. 17.

[55] *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014).

[56] *Miller v. Blackwell*, 348 F. Supp. 2d 916, 921 (S.D. Ohio 2004).

[57] *Dusenbery v. United States*, 534 U.S. 161, 168 (2002).

[58] Utah Code Ann. § 20A-1-101 *et seq*.

[59] Utah Code Ann. § 20A-9-202(5)(a).

[60] Utah Code Ann. § 20A-9-202(5)(b)(i).

[61] Utah Code Ann. § 20A-9-202(5)(b)(ii).

challenge within 48 hours. He failed to do so. He notified Plaintiff Grayeyes of the challenge eight days later via regular mail, even though Nielson had Grayeyes's email address and even though the use of regular mail would not allow a timely response. More importantly, Defendant Nielson did not resolve the challenge within 48 hours. His authority to invalidate Plaintiff Grayeyes's candidacy ended at 4:30 p.m. on March 22, 2018. Defendant Nielson's action on Plaintiff Grayeyes's candidacy, including the May 10th Letter, is void and without legal authority because Nielson failed to comply with Utah Code Ann. § 20A-9-202(5).

**Challenge to Voter Status**

Defendant Nielson argues that he had discretion to provide Ms. Black with a form meeting the requirements for challenges[62] and to construe her initial March 20th Challenge as a voter challenge as opposed to a candidacy challenge. This argument is not persuasive or supported by the plain language of the documents or the statute.

On their face, the March 20th Email and March 20th Challenge submitted by Ms. Black were not voter challenges. Defendant Nielsen did not interpret them as voter challenges until Mr. Eldredge pointed out the voter challenge statute on March 22, 2018—after the time to resolve a candidacy challenge had expired. By the time that Defendant Nielson sent Plaintiff Grayeyes the March 28th Letter, no voter challenge existed. Overall, Defendant Nielson's assertions that the March 20th Email and March 20th Challenge were a voter challenge are contrary to the documentary evidence. Defendant Nielson was legally required to dismiss the March 20th documents as insufficient. He did not do so.

In mid-April 2018, Defendant Nielson solicited Ms. Black to complete a new voter challenge. This solicitation shows that no valid voter challenge existed before April 16, 2018.

---
[62] Utah Code Ann. § 20A-3-202.3(1)(c).

The March 28th Letter was issued with regard to the March 20th documents, which clearly do not state a voter challenge and which the law required to be dismissed.[63]

The March 28th Letter intentionally misled Plaintiff Grayeyes regarding the complaint(s) received against him and the review process in which Defendant Nielson was engaged. "It must be inferred that this was knowingly and purposely carried out. There is no other permissible inference to be drawn from the communication of half truths or silence where there is an obligation to speak out."[64]

The March 28th Letter also failed to give notice of the time for response to a voter challenge as the statute required;[65] did not inform Plaintiff Grayeyes that he was entitled (and might be required) to cast a provisional ballot at the time of voting;[66] and did not fully inform Plaintiff Grayeyes of the basis for the challenge.[67] Additionally, Defendant Nielson's May 9th decision on the voter challenge was issued before the statutory time expired for Grayeyes to respond.[68] All of these actions show that Defendant Nielson failed to adhere to state mandated procedures for a voter challenge and as a result, Defendant Nielson denied Plaintiff Grayeyes the due process of law.

---

[63] Defendant Nielson should not have notified Plaintiff Grayeyes of the March 20th Challenge because notice is only proper if a challenge "meets the requirements for filing," which the March 20th documents did not. Utah Code Ann. § 20A-3-202.3(3).

[64] *Yanito v. Barber*, 348 F. Supp. 587, 593 (D. Utah 1972)

[65] Utah Code Ann. § 20A-3-202.3(3).

[66] Utah Code Ann. § 20A-3-202(3)(a).

[67] Defendant Nielson did not provide Plaintiff Grayeyes with a copy of the challenge received. Furthermore, he muddied the issues by referring to a voter/candidacy challenge, and did not clarify the precise facts of Ms. Black's challenge. Utah Code Ann. § 20A-3-202(3)(b).

[68] Utah Code Ann. § 20A-3-202.3(3).

**Use of Voter Challenge to Challenge Candidacy**

There is no connection between the candidacy challenge procedures of Utah Code Ann. § 20A-9-202(5) and the voter registration challenge procedures of Utah Code Ann. § 20A-3-202.3. The statutes themselves do not state that it is proper to use a voter eligibility challenge in connection with a challenge to candidacy. Although candidacy and voter registration may both be challenged on residency grounds,[69] the statutes governing challenges to voter registration and candidacy have different procedural and timing requirements. The 48-hour deadline for a candidacy challenge is not explicitly extended by Utah Code Ann. §§ 20A-3-202 or 20A-3-202.3. Therefore, if a challenge to voter eligibility under Utah Code Ann. § 20A-3-202 on residency grounds is made in connection with a challenge to candidacy under Utah Code Ann. § 20A-9-202(5) on the same grounds, the clerk is still required to decide the challenge to candidacy within 48 hours.[70] Mr. Brenchley alerted Defendant Nielsen of this in their March 22, 2018 email correspondence.[71] Defendant Nielson acted contrary to law when he utilized the April 16th voter challenge to invalidate Plaintiff Grayeyes's candidacy.

**Other Acts without Statutory Authority**

Defendant Nielson ceased to be a neutral actor and combined the roles of investigator and prosecutor, depriving Plaintiff Grayeyes of due process.[72] Aside from soliciting a new voter registration challenge from Ms. Black, Defendant Nielson also initiated an outside investigation

---

[69] Utah Code Ann. § 20A-3-202(1)(b) (voter residency requirement); Utah Code Ann. § 17-16-1(1)(b) (candidacy residency requirement).

[70] Defendant Spencer Cox's Response to Plaintiffs' Motion and Brief in Support of Preliminary Injunction and Related Relief, docket no. 56, filed July 11, 2018.

[71] Crt. Ex. 6.

[72] *See, e.g., Anderson v. Industrial Comm'n of Utah,* 696 P.2d 1219, 1221 (Utah 1985) (citing *Amos Treat & Co. v. SEC,* 306 F.2d 260 (D. C. Cir. 1962) (violation of due process to combine prosecutorial and judicial functions)); *Taylor v. South Jordan City Recorder,* 972 P.2d 423, 424 (Utah 1998) (county official who has interest as advocate in election contest cannot be trusted to discharge administrative duties).

of Plaintiff Grayeyes's residence.  This action is not permitted or authorized by statute.  Under Utah Code Ann § 20A-3-202.3(4)(b)(ii), the election officer shall resolve a voter challenge based on the "available facts and the information" submitted.[73]  The statute further cites examples of "available facts and information," such as voter registration records and other documents or information available to the election officer.  This language clearly contemplates documents and information that exist at the time a complaint is received and the materials received from the challenger and from the voter who is challenged.  Deputy Sheriff Turks's investigation and subsequent report was not "available" to Defendant Nielson at the time that the March 20th Challenge was submitted; instead, Defendant Nielson took on the role of prosecutor to create evidence that Ms. Black, the complainant, had the duty to provide.[74]  The burden of proof by clear and convincing evidence is on the challenger,[75] not on the election official.

**Plaintiff Grayeyes Has Shown a Strong Likelihood of Success**

Plaintiff Grayeyes has a strong likelihood of success on his due process claim.  The right to vote and to seek political office are fundamental civil rights.  Defendant Nielson's application of the candidacy and voter registration challenge statutes denied Plaintiff Grayeyes of due process of law guaranteed by the Fourteenth Amendment.  Both forms of the challenges received—March 20th Challenge and April 16th Challenge—were insufficient.  The timeline to determine a candidacy challenge was not complied with, and Defendant Nielson improperly sought to expand that timeframe by using the voter challenge statute to make a backdoor challenge to Plaintiff Grayeyes's candidacy.  Defendant Nielson overstepped his role by taking

---

[73] Utah Code Ann § 20A-3-202.3(4)(b)(ii).

[74] Utah Code Ann. § 20A-3-202.3(4)(b)(i) (The filer of the challenge has the burden to prove, by clear and convincing evidence, that the basis for challenging the voter's right to vote is valid.).

[75] *Id.*

16

on a prosecutorial role; an investigative role; and directing Ms. Black to complete a voter challenge. He also falsified the voter challenge once received. Defendant Nielson gave notice of a voter challenge when there was none. He failed to specify a time for Grayeyes's response and decided the voter challenge issue before the actual deadline for a response.

## No Bond is Required.

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security *in an amount that the court considers proper* to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[76] Trial courts have "wide discretion under Rule 65(c) in determining whether to require security."[77] Defendant Nielson has not requested a bond; however, the issue must still be addressed.[78]

An injunction may be issued without bond where there is no proof of likelihood of harm to the other party.[79] None of the defendants, including those dismissed, identified any harm that they are likely to suffer if the requested injunctive relief is granted. Moreover, this preliminary injunction enforces fundamental constitutional rights. Waiving the security requirement best accomplishes the purposes of Rule 65(c).[80]

---

[76] Fed. R. Civ. P. 65(c) (emphasis added).

[77] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009).

[78] *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) ("[U]nlike the case in which a bond is denied as unnecessary after full consideration, when a trial court fails to contemplate the imposition of the bond, its order granting a preliminary injunction is unsupportable.").

[79] *Winnebago Tribe of Neb. v. Stovall,* 341 F.3d 1202, 1206 (10th Cir. 2003).

[80] *RoDa Drilling*, 552 F.3d at 1215. *See also Complete Angler, LLC v. City of Clearwater Fla.,* 607 F. Supp. 2d 1326, 1335-36 (M.D. Fla. 2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right.").

17

## ORDER AND PRELIMINARY INJUNCTION

THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Motion[81] is GRANTED and a Preliminary Injunction is GRANTED.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Defendant San Juan County Clerk John David Nielson, his agents, servants, employees, and attorneys; and all other persons who are in active concert or participation with him are restrained and enjoined pending trial of this matter as follows:

- They are restrained and enjoined from taking any further action on the March 20th and April 16th Challenges filed by Wendy Black.

- They are ordered to disregard the May 9th and May 10th decision letters, which were ineffective to bar Plaintiff Willie Grayeyes from his status as an eligible voter and his status as a candidate for San Juan County Commissioner in District 2 in the November 2018 general election.

- They shall not employ any non-statutory procedure and shall comply with statutory procedures with regard to Plaintiff Willie Grayeyes's status as an eligible voter and his status as a candidate for San Juan County Commissioner in District 2 in the November 2018 general election.

- They shall provide immediate (with not more than six hours delay) email notice to Plaintiff Willie Grayeyes and counsel of any future events or actions, including without limitation, any challenge, contest, claim, notice, or complaint, with regard to Plaintiff Grayeyes's status as an eligible voter or his status as a candidate for San Juan County Commissioner in District 2 in the November 2018 general election.

- They shall electronically file with this court, immediately and not more than 12 hours after receipt, any challenge, contest, claim, notice, or complaint with regard to Plaintiff Willie Grayeyes's status as an eligible voter and his status as a candidate for San Juan County Commissioner in District 2 in the November 2018 general election.

---

[81] Docket no. 13.

IT IS FURTHER ORDERED that the parties shall meet and confer and do one of the following by August 21, 2018:

- File a jointly signed Attorney Planning Meeting Report and also email a stipulated Proposed Scheduling Order in word processing format to dj.nuffer@utd.uscourts.gov; or

- If the parties cannot agree on a Proposed Scheduling Order, the parties must file a jointly signed Attorney Planning Meeting Report detailing the nature of the parties' disputes and must also file a stipulated Motion for Initial Scheduling Conference.

IT IS FURTHER ORDERED that on or before August 24, 2018, Defendant Nielson shall file a memorandum stating any reason summary judgment should not be entered consistent with this order under Rule 56(f)(3) on Plaintiff Grayeyes's due process claims. Plaintiff Grayeyes may file a response (or waiver of response) on or before September 5, 2018.

Dated August 9, 2018.

BY THE COURT:

_____
David Nuffer
United States District Judge